May it please the Court. The indictment in Mr. Welker's case fails to allege a scheme to defraud either Welker's ex-wife or national life of property. First, the indictment fails to allege a scheme to deprive R.W. of the insurance payouts, as these payouts under Iowa law were considered marital property, and this was placed into their joint bank account. Further, the indictment fails to allege a scheme to defraud national life, as they received the benefit of their bargain. This Court should decline to apply federal criminal law to acts of marital dishonesty, and the indictment must be dismissed for failure to state a claim. Now at its most basic level, federal fraud requires the intent to deprive another of their property, or as one court has stated, it's about cheating someone out of something of value. Here, there's no allegation in the indictment of an intent to, a scheme to defraud or to deprive R.W. of something of value, because Mr. Welker had equal rights under the law to this insurance payout. Under Iowa law, this payout belonged to both R.W. and Mr. Welker. You cannot deprive somebody of property that you have yourself a property interest in. And the government doesn't appear to strongly dispute or dispute at all that this would be considered marital property. Instead, the government focuses and relies upon state cases, state cases discussing state criminal laws, where a spouse has been convicted of some kind of crime for interference with marital property. I thought you just said, though, that at the beginning, that under Iowa law, they had equal right to the property. So wouldn't the state law cases be relevant then? No, Your Honor, because those state law cases that the government starts aren't determining what is property. They're determining what is a violation of state criminal law. Those cases are analyzing, you know, I think there was a trespass, burglary. Can someone be convicted of those crimes if their criminal act involves marital property? So they're analyzing... Do they have to consider whether the spouse has equal right to a property, as you put it, or whether destroying or taking property infringes on the right of the other? In those cases, in many of those cases, I believe, the argument generally was, well, this was my property, too. It was joint marital property. And there the courts determined, when interpreting those state criminal statutes, that that did not matter because someone could interfere, based off of whatever the state criminal statute was, could be convicted of that offense, even if it was marital property. And I think there's this distinction, and this is pertinent in the Alaska case that the government cites in their brief. And in there, the court did reverse on the scheme to defraud, and that was a little bit different, in that there was concealment of assets during a divorce proceeding. But even in that circumstance, when they're interpreting a state statute, the Alaska Court of Appeals said, well, we need to make sure that the government is alleging and proving, ultimately, that the spouse did not have a right to interfere with that, that there was not some kind of claim that, even if they both had joint rights to it, that someone could still be convicted for an offense based upon that. And I think this brings up a concern addressed by the Sixth Circuit in the Sadler case, where this may well be, Mr. Walker's conduct may well be a violation of some state statute. It may well be a violation of some Iowa state law. But federal fraud statutes should not be broadened to cover all kinds of deception, normally types of deception that are better left to the states. And that was what Sadler was concerned with and discussed, in that federal fraud should not be broadened to cover the type of criminal acts that are generally regulated by the state. So that is why, within decades of Supreme Court precedent, the court has been very clear to narrow and to ensure that this federal fraud statute is not a mechanism for prosecutors to impose their standards of decency or to impose, you know, just general notions of fairness. That this is truly focused on schemes to defraud individuals of property. Ms. Quick, is your argument, is it the same or different than a request for an instruction on impossibility? Is that something that would have, if you had gone to trial on that, is that the same thing that you're arguing here? Is it different? I am not, I guess I'm not sure what an instruction on impossibility would look like. I think what you're saying, it's legally impossible for him to commit this crime because he had full access to the money under Iowa law, is that right? I was just curious, because motions to dismiss indictments are unusual, we're usually looking at defenses at the end, and I was just wondering how this sort of fit with the idea of an impossibility defense, but I don't know if that's relevant. I don't think that this is something that would need to go to trial and be a question of whether this is a defense or not to the allegation of fraud. This is simply that, and the court will do it, it's not common in a motion to defense, but when it's not something that is a factual question for a juror to resolve, but simply a legal question, is this property one that Mr. Welker had right to under the law, then it's not necessary to put it before a jury and have the jury decide. In fact, in the importance of the need to preserve judicial resources, there is no need to have the jurors go and decide issues of fact when the undisputed issues of fact legally would mean that Mr. Welker has not committed a Federal fraud offense. I mean, what specifically is it here? It's the lack of the intent to defraud. Is that it? Because there was joint ownership of the property? I mean, in some sense, there was an intent to defraud broadly here, right? I mean, the intent was to mislead about the size of the payments and to take the excess monies for himself, right? And that, in some sense, might be considered an intent to defraud. Why isn't that enough on maybe that higher level? I don't think it's necessarily about the intent to defraud. I think it's more about the requirement, intent to defraud to obtain property. Inherent in the Federal fraud statute is a requirement that it be a wrongful taking. And our position here is even if it was deceptive and, you know, unethical conduct, there is no intent to take property, and there cannot be when the individual has a legal right to that property. And it's the urging in our position that the government's theory of prosecution in this case is expanding Federal wire and mail fraud to say, well, this is deceptive conduct, which is true. It may very well be true, but that's not what Federal fraud statutes are for. They are limited to these specific circumstances where the scheme to defraud, where the deceptive conduct, the purpose of it is to engage in this taking and to take property an individual does not have a right to. When you said that your client had the right to this property, what if you added the word exclusive right to the property? Is that wrong? Does that cause problems for your argument? Because she also had the right to all of the property under your theories. So if it were the situation where he must have the exclusive right to the property or if Ms. RW had the exclusive right to the property, our position is in these kinds of circumstances when you're talking about joint ownership, the Federal fraud statute should not be used to come in and resolve disputes about, you know, one joint owner disagreeing with how another joint owner used the property or you think about partnership disputes. That's not the purpose of the Federal wire fraud statute. When two individuals have rights to the property, that this statute should not be used to kind of either regulate or criminalize alleged wrongdoings in those circumstances. I think it would be a much different circumstance if this was only her property. It's not a defense and it's not the allegation that a husband can never steal from their wife. The question is, under Iowa law, this was considered marital property that they both had the right to, and the Federal fraud statute is not broad enough to encompass this. Under Iowa law, as you understand Iowa law, a spouse can do anything he or she wants with marital property? Destroy it, sell it, lease it? It may be a violation of some state criminal statute, and it could be that RW is entitled to some. Why would it be a violation of a state criminal statute if your theory is correct? It would depend on what the state statute states in their legislative history, and in those circumstances, and I think one of the cases that the government cites deals with Iowa burglary, and there they went through the legislative history and they looked at the statute and determined that even though somebody has a right to, has like an ownership right in that property, it doesn't mean the individual has a right to go in and destroy that property when someone else might have an interest. So it's very specific to what that state statute is and what it's allowed to regulate. The court doesn't need to say, well, this is, the court does not need to say in order for Mr. Welker to succeed on this that a husband can always, no matter what, do whatever he might want to do with marital property and there are no rules. What's the limiting principle then? The limiting principle is that it's not federal fraud. That's a conclusion, but why is it not federal fraud? What is it about Iowa property law that makes it not obtaining property? The reason it's not federal fraud is that because under Iowa law, this is considered joint property and they both had the right to it, and there's no allegation in the indictment that Mr. Welker did not have a right to these funds, that it would not can be considered marital property. So are you suggesting basically that the state's substantive criminal laws that we were talking about earlier carve out an exception from the general rule? Is that the argument, that in Iowa that's marital property insurance proceeds, but the legislature can carve something out and say on these particular facts you may have committed this particular crime? Yes. Is that where you're going with it? I believe so, Your Honor. That it is, I mean, it is very fact specific, and that even though a state may determine under their criminal scheme that an act to jointly held property could involve some kind of criminal offense, that does not rule the day as far as how we interpret our federal fraud statute. And it is, our argument is dependent on how you define property as well. So it does depend on that, but again it's not the question of what states are regulating and what they are saying is a crime when it comes to marital property. It's a question of does it meet the elements as they've been laid out by the legislature and the Supreme Court for federal fraud. If there are no immediate questions, I preserve the remainder of my time. Very well. Thank you for your argument. Ms. Shirley, we'll hear from you. May it please the Court, Counsel. This Court can affirm the ruling of the District Court without considering the marital property or right to control arguments because the indictment sufficiently alleges a scheme to defraud National Life Insurance. This case is not novel or an outlier because the indictment sets forth that Michael Welker knowingly devised a scheme to defraud National Life Insurance and RW and to obtain money from National Life and RW by means of materially false and fraudulent pretenses, representations, promises, and by intentional concealment of material facts. Where's the deprivation of property with the insurance company? The deprivation of the property with the insurance company is the payout. The heart of the fraud in this case is the fraudulent and forged documents. Where's the harm, though? I mean, the check went to someone who had legal right to it, right? Not all of the check. It was $173,000. It's marital property. Let's say it is marital property. My understanding is the government doesn't dispute that. Am I incorrect on that? Correct, but I think it's interesting to note that the marital decree was in 2018, and these payouts weren't even found out until 2020. So there may be a question of, is it marital property? Because at the time— I guess my question is, what is the government's position on appeal? Because I had understood that that was not a fighting issue anymore. It is marital property. Okay. But as far as what the harm is, is first, Michael Welker took the entirety of the $173,000 payout from National Life Insurance. What does National Life care? They care because, first of all, the accelerated benefit payout and the forged documents are what's key. The owner of the policy, which was allegedly Rebecca Welker in quotes because it wasn't really—she didn't know about it, is the one that has to apply for the accelerated benefit. It says so in Exhibit A of Defendant's Own Exhibits to the Motion to Dismiss. And I'll let you go with this. I'm probably beating a dead horse. But the accelerated payout is probably based on a calculation of the current value of the policy and the expected, you know, life expectancy and that sort of thing, which was conducted here and the check was cut in the amount that they would have if RW had submitted it herself, right? So I understand that it's a fraudulent scheme of sorts. I just don't understand how the company was defrauded. And I'll move on from that because—but I'm still not clear on that. Okay. If I may respond to that, there's a similar case, the Sadler case, which I believe Ms. Quick referenced out of the Sixth Circuit. In that case, Karen Sadler used a fake name and false pretenses to get prescription drugs, but she paid in full for the drugs. So the court says, well, we don't really think this is a wire fraud because what's the harm to the pharmaceutical company? You're getting the benefit of the deal. Yeah, she lied about her name and the false pretenses. But this is different. While they're both consumer transactions, they're inherently different. The insurance policy is intended for the particular person, the insured, and it's designed for them. RW was presented as the owner and the insured of that policy, her personal policy, but we know that she didn't know anything about it. The identity of the person is material to this insurance policy and it being issued. Look at all the information that they're asking for. They're asking for health information, personal information. This was basically unique to her, but her husband, without her knowing it, issued all the documentation which was forged to national life. So he, in essence, got the benefit of this insurance policy without his wife knowing. But then we get to the payout. Yes, it is a calculation. It's some weird mathematical thing that I probably will never understand. But the deal is that the insurance company lays forth the rules of who can get this accelerated benefit, and that's in the Exhibit A, which I referenced before. They say the owner of the policy must apply and the money must go to the owner. Those are the parameters that National Life set forth. In submitting these forged documents with RW's name on them, he defrauded the insurance company by getting a payout that National Life would not have paid out but for his fraud. He lied about who he was. He forged his wife's signature and submitted it to the insurance company. The insurance company relied on that information, and that can be found on Exhibit... It's contained in the attachments to the defendant's motion to dismiss where the insurance company responds back after finding out about this fraud because RW is confronting them saying, hey, I want my money. And they're like, whoa, whoa, whoa, we were duped too. And this is Defendant's Exhibit G to the motion to dismiss. It says, by all appearances, an application for election of benefit form was signed by Ms. Welker. By all appearances, the signature appeared to be legitimate, and we had no reason to question it. Your assertion appears to be that Mr. Welker forged RW's signature on the claim forms. We had no reason to question the authenticity of the signature, and we acted in good faith. If he acted as you contend, we are not responsible for this conduct. So they are, in effect, saying we had no reason to question these signatures, so we were duped too by Mr. Welker. So you're saying even though they didn't suffer a financial loss, they're still a victim of a scheme to defraud? They suffered the loss of $173,000 because but for Mr. Welker's false representations, they wouldn't have issued the money. They may have issued it, though. I guess it depends. I mean, if she would have done the same thing to get the money for herself, they're not saying that we wouldn't have issued the policy, are they? No. They're saying she qualified for a policy and she qualified for the early payout. Yes, but she had no knowledge of either of those two things, either the policy or the payout. And in essence, Mr. Welker has to essentially defraud National Life to defraud his wife or vice versa. So you think the easier way for us to affirm is on the National Life argument? I do, but there are other, the marital property issue, because even under Iowa law, Ms. Welker, RW was clearly entitled to half of the payout that he, Mr. Welker, concealed. And also there is the ability to control spending theory, which we discussed. Why do you say she was entitled to half? Where do you come up with that, with the marital property under Iowa law? It may be an assumption, but the split of the marital property is to be equitable according to Iowa law. In a separation procedure or divorce, is that right? Correct. How is that relevant here? How is how the property would be divided into a divorce? Why is that the relevant factor here? I don't believe it is relevant, but in looking at what was obtained during the course of the marriage, technically Mr. Welker did obtain the payouts from Transamerica and National Life during the life of the marriage. So they were procured by fraud, but I don't, I can't find a case that says that there is an exception and that wouldn't be a marital property. But even assuming that it is marital property, she is entitled to an equitable distribution, and she has some ownership of the property, and she was deprived of that ownership by Mr. Welker through his deception. But the state court can address that, right, in distribution of marital assets and things like that. I mean, there can be set-offs and things like that. Is that a factual impossibility here? They didn't even know about it at the time of the dissolution. Is it possible to go back? Maybe, but in looking at the statute and what Mr. Welker did, it fits, and a grand jury felt that way as well. But not only are we dealing with Mr. Welker, excuse me, not only are we dealing with the victim RW, we're also dealing with National Life Insurance, who was defrauded as well. When you say that the National Life was defrauded, I understand you to be saying that, look, he lied, right? He said I'm somebody that I'm not. But, again, back to it, they have to be defrauded of property, right? Correct. And where does that come in? They were defrauded. There's nothing, I'm sorry, just to follow up, there's nothing, if I understand correctly, there's nothing about the application that is inaccurate other than the person behind the pen. Correct. But I think it's important to note that RW had no knowledge or consent of someone getting a life insurance policy in her name that she owned. That is correct. But then that sort of collapses the two frauds, though, right? So you're saying we can independently, you're asking for an affirmance, an independent grounds of the National Life, but your argument, at least as I'm hearing it, seems to collapse the two frauds between National Life and RW. I think it goes both ways, actually, because National Life, yes, they did issue this policy, but it was under false pretenses. They issued a life insurance contract to Michael Welker. But they believe they were issuing a life insurance contract to… They didn't seek to rescind the contract or anything like that, did they? No, but they knew about it after the fact. They found out about this fraud in 2020. Did they seek to recover the funds? No. But I don't think it matters as far as talking about the sufficiency of an indictment. If this had been a trial… Do you think that these could be defenses? I think maybe you're going that way. So if this went to trial, would the government be objecting to an instruction on either factual or legal impossibility? Yes, because we'd bring forth more evidence. The indictment states clearly it mirrors the statute, which is sufficient under a circuit law. It makes it very clear that the government is alleging that Mr. Welker defrauded both R&W and National Life. Everything that we're talking about could be flushed out in a trial. I'm sorry, my question was not good. Would you object as a matter of law that that would just not be a possible instruction at all under any circumstances of how the facts unfolded? Is that a possibility? Of course, but it would be a trial issue. The indictment, it's not possible to lay out every possible factor or defense in the indictment. The purpose of the indictment is what we did when we mirrored the statute, and it's to inform the defendant of what he's been charged with so he has a chance to lodge a defense against that. When we're looking at the sufficiency of the indictment, I feel like we're getting really deep in the weeds as to possible defenses or what could have happened, what maybe could have happened at trial, but that speculation as to what could happen at trial doesn't apply when we're looking at the indictment. We're looking at the four corners of the indictment, and as it is pled, the indictment is sufficient, and this Court should affirm the ruling of the district court because it mirrors the statute, and if the defendant disagrees that he committed this offense, he should have went to trial. The government believes there are a number of ways that this Court can affirm the district court, the first being my primary argument of the indictment clearly states that national life was defrauded, but also that R.W. and national life were defrauded, and then in the alternative, the government would also set forth that Mr. Welker deprived R.W. of her right to have any control over the property, which is currently the right to control is currently counts as property under the binding a circuit precedent under the Shires case. Thank you very much. This is inappropriate to be disposed of on a motion to dismiss the indictment for failure to allege an offense. The government has conceded that it is marital property, which makes this a legal question, something that can be disposed of pretrial. It's not something, there's not questions of fact that a jurors need to find. It is legally impossible for this to be, maybe that's not the right word to use, but it's not an offense because this property was such that Mr. Welker had an equal claim to. And I would note, as far as discussing national life, this new allegation that I've just heard is that national life would not have given out these proceeds. It's not something that's in the indictment. They did not allege that. They did not allege, this might be a different case if they had alleged national life would not have given out the early payout. National life, maybe they would have charged higher premiums if they had known this was going on, or maybe they would have given less. That's not alleged. And I think it's telling that national life is not listed as a victim in this case. And the government's whole theory throughout this prosecution was not that this payout shouldn't have happened because if that were the case, RW wouldn't be getting $170,000-plus in restitution. So you can't kind of have it both ways. Say no payout should have happened and then say, okay, yes, it should have happened, but actually it should have been RW's. Both cannot be true. And as far as whether this is, where is the deprivation of property when it comes to national life, there is not. And courts have acknowledged and recognized when a government or when a contracting party, when they get the benefit of their bargain, that that does not constitute federal fraud. There's, in those cases, it is that limited because the Supreme Court has been clear over and over again that this federal fraud statute is not meant to just criminalize acts of dishonesty or to federally criminalize any kind of deception. And I would note, in conclusion, a lot of the government's argument in the brief, and what they talked about today is, well, this is unfair, and he lied. And that may be true, but that does not make it federal fraud. It still needs to be a misstatement for the purpose of obtaining property that you do not have a right to. And the government has not alleged that in the indictment, and that is why the district court's decision declining to dismiss the indictment must be reversed. Thank you. Very well. Thank you, both, for your arguments. The case is submitted. The court will file a decision in due course. Counsel are adjourned.